## Lerch v. Noble.

*Street crossing—Right-angled collision of automobiles—Duty of drivers approaching crossing—New trial.*

1. In a suit to recover damages for injuries caused by a right-angled collision of automobiles at a street crossing, the jury was properly instructed that it was the plaintiff's duty to see whether a car was coming from his right which had the right of way, and if he did not do that, and failed to stop and let the defendant's car pass, he was guilty of contributory negligence; and if the defendant saw the plaintiff coming and that the plaintiff had committed himself to crossing, it was the defendant's duty to stop, even though he had the right of way, but if he did not see the plaintiff, the plaintiff could not recover, because he had not done what he should have done.

2. A new trial should not be granted on the testimony of the two plaintiffs that the defendant had conversed with a juror, which the defendant denied, where the circumstances seem to support the defendant's denial.

Rule for new trial. C. P. Lancaster Co., Feb. T., 1924, No. 57.

Paul A. Mueller and John M. Groff, for plaintiff and rule.

H. Edgar Sherts, contra.

HASSLER, J., April 17, 1926.—The first eight of the nine reasons for a new trial filed in this case point out alleged errors in the trial. Seven of them were not insisted on at the argument and are without merit. The third, which is pressed, is as follows: "The court erred in instructing the jury as follows: 'But if, as Dr. Noble and Mr. Renninger told you, he did not see the car or the car was not across the south crossing, and he started across and was struck the way he says he was, then the plaintiff cannot recover, because the plaintiff did not do what he should have done and failed to do what he should have done.'" It is argued that this is error, because "it means that there must have been a wilful and knowing running-down of the plaintiffs' car by defendant's before recovery could be had. If the defendant ought to have seen the plaintiff's car, his legal liability is fixed."

What we said to the jury is not capable of the construction which the attorney for the defendant places upon it, if the whole paragraph of our charge, of which it is a part, is read. What we said to the jury is as follows: "Under the law, Dr. Noble had the right of way, as he was going across the crossing, the intersection of the street, at the right of the plaintiff, so that if the track was clear, and even *though he could have seen the plaintiff* south of the south crossing on Charlotte Street, crossing Chestnut Street, Dr. Noble had the right of way. But if he saw the plaintiff, Mr. Lerch, had committed himself to the crossing, that is, he was crossing in front of him, then it was Dr. Noble's duty to stop, notwithstanding he had the right of way. But if, as Dr. Noble and Mr. Renninger told you, he did not see the car (plaintiff's), or the car

was not across the south crossing, and he started to cross and was struck the way he says he was, then the plaintiff cannot recover, because the plaintiff did not do what he should have done. . . . *It was the plaintiff's duty to see whether a car was coming,* and if it was at the intersection or about crossing the street, and it was the plaintiff's duty to have stopped and avoided the collision, because the one coming from his right had the right of way, and if he did not do that, if he failed to stop and let the car operated by the defendant cross in front of him, he was guilty of contributory negligence." We are not convinced that there is any error in this portion of our charge.

The ninth reason for a new trial is as follows: "There should be a new trial granted in the above case for the reason that, after the jurors had been charged by the court, and when they left the court-room to go to the jury-room to deliberate, Dr. I. E. Noble, the defendant, joined one of the jurors and walked with him from the door of the main court-room to the steps adjacent to the elevator shaft and stood there constantly conversing and chatting with said juror."

In the depositions taken in support of this reason, Samuel P. Lerch, one of the plaintiffs, who is a justice of the peace living at Penbrook, Dauphin County, Pennsylvania, testified that he saw Dr. Noble, the defendant, pass out of the court-room after the jury had gone out and mingle with the jurors on the way to the elevator and converse "very jovially with one particular man." He testified that the man was a juror, though he did not know his name. He testified also as follows: "Q. You were standing in the archway of the door of court-room No. 11? A. Yes, sir. Q. And were you looking out into the corridor? A. Yes, sir; I suspected it. Q. Did you see the jury out in the corridor? A. Yes, sir." On cross-examination, he said: "Q. You say you were suspecting something. What did you mean? A. We were lambs among a den of wolves, I concluded. Q. Who were the wolves? A. They must have been down there according to the deliberations of the jury. A. And for that reason you suspected Dr. Noble? A. We always look into things as near as we know to avoid all kinds of trouble." His son, Mizpoh O. E. Lerch, who is also a plaintiff in this case, corroborated this. He said: "Q. Was there a tipstaff following the jury when they went down the corridor? A. I could not tell you. I don't know that. Q. How far down the corridor had the jury got? A. The tail end was about two yards out of the door when I went out. Q. How far after that was Dr. Noble? A. It was only a matter of a second when he came out. Q. Did you move from where you were? A. I had to move. Q. After Dr. Noble passed out? A. He certainly did. Q. Where did you go? A. I walked after him and watched him." From the door of court-room No. 1 to the steps, which they said Dr. Noble went down, the distance is sixty-seven feet. As the jury had passed out of the court-room before Dr. Noble did, it had certainly gone part of this distance before he caught up to it, if he did do so. He would, therefore, have had but a very short distance to have conversed with one of the jurors.

Dr. E. I. Noble, the defendant, denies most positively that he conversed with any member of the jury. He said he left the court-room about a minute after the last juror went out, because he had a number of calls to make, he being a practicing physician. He says he did not know a single one of the jurors.

We are not convinced of the truth of the charge made by the plaintiffs against Dr. Noble. If Dr. Noble had desired to influence a juror improperly, he would hardly have tried to do so in walking a few steps with one of them and talking jovially with him in the corridor leading to the elevator, when it was in charge of the court's officer. The testimony of the plaintiffs is not very

convincing, in view of the fact that one of them was clearly preparing to attack an adverse verdict if one was rendered, as he says he "suspected" Dr. Noble would attempt to influence a juror, so he watched the jury in the corridor, when the jury was outside of the court-room, even though Dr. Noble had not left it when he stationed himself at the door to watch him in the corridor. He also described himself and son as being "lambs among a den of wolves, as shown by the deliberations of the jury." The deliberations of the jury could not have caused him to suspect jury-fixing, as their deliberations occurred after he watched them in the corridor. We believe that Dr. Noble, in denying the charge made against him, is telling the truth, and that this charge is made by the plaintiffs without foundation, but solely for the purpose of obtaining a new trial, they having prepared for it in case the verdict should be against them. We are confirmed in this view by the fact that, under the law and the evidence, no other verdict than one for the defendant was justified, and the further fact that the jury deliberated but a very short time before arriving at their verdict, although there was considerable testimony given by a number of witnesses.

The rule for a new trial is discharged.

From George Ross Eshleman, Lancaster, Pa.